UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KICKHAM HANLEY P.C.,


                              Plaintiff,

                                                          DECISION AND ORDER

                                                          08-CV-6087L


                    v.

KODAK RETIREMENT INCOME PLAN,
TRUSTEE OF THE KODAK RETIREMENT INCOME PLAN,
KODAK RETIREMENT INCOME PLAN COMMITTEE,



                              Defendants.
_____


## INTRODUCTION

Plaintiff Kickham Hanley, P.C. ("Kickham Hanley"), a Michigan-based law firm, brings

this action against defendants, an ERISA plan (the "Plan") and its administrators (collectively

"KRIPCO"), alleging entitlement to attorneys fees from a "common fund" allegedly secured for

certain Plan beneficiaries by plaintiff.

Plaintiff has moved for a preliminary injunction preventing KRIPCO from disbursing full

benefits to the Plan beneficiaries pending the Court's determination of whether plaintiff is

entitled to the attorneys fees it seeks to deduct from those amounts.  Defendants have cross-

moved to dismiss the Amended Complaint and to strike certain allegations relating to settlement

negotiations.  For the reasons set forth below, plaintiff's motion for injunctive relief (Dkt. #3) is

granted in part, and defendants' motions to dismiss the Amended Complaint, and to strike (Dkt. #30) are denied.

**<u>FACTS</u>**

In May 2007, administrators of the Plan allegedly determined that certain Plan participants (the "Terminated Participants") were ineligible to receive pension benefits.  Plaintiff, a law firm retained by a single Plan participant, Michael Scanlan, purportedly to act on behalf of Scanlan and all others similarly situated, challenged the denial of benefits through an administrative claims process set forth by the Plan.  On or about March 31, 2008, the Plan administrators allegedly reversed their position, and notified Scanlan and other participants that they would receive pension benefits (the "Plan Payments") under the Plan.

On February 27, 2008, plaintiff initiated the instant action, seeking a declaration of its right to attorneys fees, to be deducted from the Plan Payments under a "common fund" theory.  Plaintiff asserts, and defendant does not deny, that defendant has already begun to make Plan Payments to some or all of the Terminated Participants.

Plaintiff now seeks an injunction, preventing defendant from disbursing more than 70% of the Plan Payments to Terminated Participants, in order to ensure that there will be sufficient monies to cover any attorney fees ultimately awarded to plaintiff, by the Court.  Defendant opposes the motion, and seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6).

## <u>DISCUSSION</u>

**I.      Plaintiff's Motion for a Preliminary Injunction**

"To obtain a preliminary injunction the moving party must show, first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor."  *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004). *See also Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).  The "'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." *N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2nd Cir. 1995).

The Court of Appeals for the Second Circuit has cautioned that, "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal citations and quotations omitted).  "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  And, irreparable harm must be shown to be actual and imminent, not remote or speculative."  *Id.*

Initially, I find that plaintiff has demonstrated irreparable harm if an injunction is not granted.  The Second Circuit has recognized in similar circumstances that, "if [counsel] were subsequently awarded attorney's fees but a portion of the common fund had not been set aside,

[counsel would have] to attempt to seek recovery from each of the hundreds of [beneficiaries] . . .

such a recourse is so impracticable as to be infeasible, and constitutes irreparable harm." *Savoie*

*v. Merchants Bank*, 84 F.3d 52, 58 (2d Cir. 1996).

I also find that plaintiff has shown that there are sufficiently serious questions going to

the merits of its claims, and that the balance of hardships tips decidedly in plaintiff's favor.

Under the "common fund" doctrine, "[w]here a party brings a private action resulting in

the creation of a large fund for the benefit of a class, the costs of litigation, including attorneys'

fees, are recoverable from the fund." *In re Global Crossing Securities and ERISA Litig.*, 2004

U.S. Dist. LEXIS 23946 at *100-*101 (S.D.N.Y. 2004), *citing Boeing Co. v. Van Germert*, 444

U.S. 478 (1980).  The doctrine has traditionally been afforded a loose translation, and courts

construing it have held, for example, that common fund fee awards are appropriate even in the

absence of a specific fund, as well as in the absence of formal litigation giving rise to the benefit,

so long as counsel's causation of the benefit can be sufficiently established.  *See Koppel v. Wien*,

743 F.2d 129, 135 (2d Cir. 1984) (fees appropriate even where "no judgment or consent decree

was entered and the complaint was dismissed as moot"); *Reiser v. Del Monte Properties*, 605

F.2d 1135, 1139 (9th Cir. 1979) (fees are appropriate where defendant voluntarily takes action,

favorable to plaintiff, that moots lawsuit); *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469, 472 (2d

Cir. 1968) (bringing of a lawsuit is not always necessary for counsel to be entitled to attorneys

fees from a common fund); *Sprague v. Ticonic*, 307 U.S. 161 (1939) ("when [a common] fund is

for all practical purposes created for the benefit of others, the formalities of the litigation – the

absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather

than through a decree," will not preclude an award of attorneys fees from the "fund"). *But see Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 211 (2d Cir. 1987) (denying fee application where no fund was created); *Holbrook v. Pitt*, 748 F.2d 1168, 1175 (7th Cir. 1984) ("the common fund doctrine cannot be applied because there is no 'common fund'").

Whether the Plan Payments plaintiff claims to have secured for a class of beneficiaries are ultimately determined to comprise a common fund, and whether the fund is attributable to the plaintiff's efforts, remains to be seen. The salient facts are by no means undisputed. Nonetheless, "the mere existence of [a factual] dispute does not preclude the granting" of a motion for injunctive relief. *Corning Inc. v. Picvue Electronics, Ltd.*, 2004 U.S. App. LEXIS 13456 at *5 (2d Cir. 2004), *citing Merkos L'Inyonei Church, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 98, 100 (2d Cir. 2003). In light of the facts alleged in the pleadings and the intricate and often contradictory body of case law concerning awards of attorney fees in common fund cases in the absence of formal litigation and/or a traditional common fund, I find that plaintiff has presented significant questions going to the merits of its claims.

Furthermore, the balance of hardships tips decidedly in plaintiff's favor. While the temporary reservation of a fixed percentage of the Plan Payments will no doubt require some additional bookkeeping and accounting efforts on the part of defendant, the loss to plaintiff in the event that the Plan Payments are fully paid out, rendering them nearly unrecoverable in the event that plaintiff is awarded attorneys fees, will be significant.

There will be a delay in the payment of benefits to some Plan Participants. That is regrettable but if it is determined that such Participants received their benefits because of

plaintiff's actions, the delay is justifiable.  Furthermore, the parties and the Court can quickly attend to the issues in this case to avoid unwarranted delay.

Having determined that preliminary injunctive relief is appropriate here, I nonetheless find that  plaintiff's request for 30% of any Plan Payments to the Terminated Participants to be reserved for attorneys fees is excessive, and out of proportion to the maximum percentage of the common fund that plaintiff might realistically expect in the event that attorney fees are awarded. *See e.g.*, *In re Bausch & Lomb, Inc. Securities Litig.*, 1998 U.S. Dist. LEXIS 17139 at *88-*89 (W.D.N.Y. 1998) (noting that although common fund fee awards in the Second Circuit typically fall between 15% and 30% of the common fund, fees of 10.5% of the common fund are appropriate in a case which presents a small risk of litigation with no novel or complex issues, notwithstanding a high quality of representation by counsel and a  "substantial" recovery by plaintiff); *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F. Supp. 445 (E.D. Pa. 1995) (awarding 6.25% of ERISA settlement fund in a case presenting a high risk of litigation and competent counsel, but high attorney fee rates and a good, but not "best," result for the class).

Under the circumstances, I find that the reservation of 15% of any Plan Payments by defendant will be more than sufficient to ensure that plaintiff can collect the full amount of attorneys fees, if any, to which it might ultimately be entitled from the alleged common fund.

I have considered the remainder of defendant's objections to plaintiff's motion for injunctive relief, and find them to be without merit.

## II.    Defendants' Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. Proc. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987).  The Court notes that the traditional Rule 12(b)(6) test, which permitted dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," has been rejected by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____, 127 S. Ct. 1955 (2007), which conclusively retired the "no set of facts" test and held that "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65 (citations omitted).  *See e.g., Transhorn, Ltd. v. United Technologies Corp.*, 2007 U.S. App. LEXIS 21086 at *6 n. 3 (2d Cir. 2007) (concluding that *Bell Atlantic Corp.*'s holding, which addressed an antitrust claim, is not limited to that context and "affects pleading standards somewhat more broadly"); *Ashcroft v. Dept. of Corrections*, 2007 U.S. Dist. LEXIS 49079 (W.D.N.Y. 2007) (discussing and applying the *Bell Atlantic Corp.* standard).

Initially, defendant argues that plaintiff's Amended Complaint fails to state a claim, because there is, as a matter of law, no common fund against which fees can be assessed.  As

discussed above, *supra*, the concept of a common fund has been loosely interpreted, and may be found where "one . . . makes a fund available for others," *Sprague*, 307 U.S. 161 at 167.   I recognize that the instant case is, certainly, atypical of common fund cases.  Plaintiff's activities (assuming for purposes of defendant's motion to dismiss that plaintiff's actions were, as they allege, a catalyst for the defendant's grant of benefits to the Terminated Participants at all) did not give rise to a common fund in the traditional sense, as no litigation was ever commenced, let alone a class action, and no "fund" was ever specifically reserved and earmarked for the benefit of the Terminated Participants.  Rather, plaintiff simply alleges that its involvement in pursuing Scanlon's claim at the administrative level resulted in a policy change by defendant which "created" a benefit for the Terminated Participants by reinstating certain benefits that they would otherwise have been denied.

Because the common fund doctrine has been generously construed from its inception, and has been held to apply even where, "the party . . . neither purported to sue for a class nor formally established by litigation a fund available to the class," I conclude that plaintiff's allegations that its actions gained the Terminated Participants, a class of similarly-situated individuals, a monetary benefit which was derived from a common source under a common Plan and which they would otherwise have been unable to obtain, is sufficient to state a claim pursuant to the common fund doctrine.  *See e.g.*, *Sprague*, 307 U.S. 161 at 166.  Whether plaintiff ultimately prevails is a matter for another day.

Next, defendant argues that an award of attorneys fees would violate the Plan's express provisions concerning fees.  Those provisions, however, do not apply to plaintiff, who is not a party to the Plan.

Defendant also urges that an award of relief to plaintiff would violate the anti-alienation provisions of ERISA and the Internal Revenue Code, by diverting a portion of the Terminated Participants' ERISA to the plaintiff.  In response, plaintiff argues that it is not a "garden-variety creditor" seeking to satisfy a judgment from the Terminated Participants' retirement benefits, but rather the very party which "created or preserved" the benefits on the Terminated Participants' behalf.

Upon review of the relevant law, I find no clear statutory intent to proscribe fee awards from ERISA-related common funds.  Indeed, a review of decisions by other courts that have granted fee awards from common funds in ERISA reveals no discussion or expression of concern about a potential conflict with ERISA's anti-alienation provision, which is designed to "protect[] benefits only while they are held by the plan administrator and not after they reach the hands of the beneficiary." *Robbins ex rel. Robbins v. Debuono*, 218 F.3d 197, 203 (2d Cir. 2000) (describing and following majority view).  *See In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 (awarding attorney fees from ERISA settlement without comment on ERISA's anti-alienation provisions); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445 (same).

Finally, defendant argues that this Court lacks jurisdiction over this action, because plaintiff lacks standing to bring an ERISA action or an action for attorneys fees, and in any event, plaintiff has not exhausted its administrative remedies.

Plaintiff, however, notwithstanding the fact that the benefits at issue arise under an ERISA plan, does not base its claims on ERISA.  Rather, plaintiff's claim to relief rests upon the common fund doctrine, and other courts have not hesitated to grant attorneys fees in such circumstances, even where the alleged common fund arose from an ERISA policy.  *See e.g.*, *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 at 469 ("[c]ommon fund awards are appropriate in 401(k) and other ERISA class litigation to the same extent as in any other type of litigation"); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445 at 456 ("[a]n award of fees from [a common] fund would also further 'the policy, underlying [ERISA], of providing both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases"), *quoting Bowen v. Southtrust Bank of Alabama*, 760 F. Supp. 889, 894 (M.D.Ala. 1991).  Furthermore, unlike a fee-shifting case, a common fund action may be pursued directly by counsel for the group upon which an alleged benefit was conferred.  *See*, *e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974); *McLendon v. Continental Group, Inc.*, 872 F. Supp. 142 (D.N.J. 1994).  Moreover, because plaintiff's claims are not based upon the Plan, to which plaintiff is not a party in any event, the Plan places no obligation on plaintiff to exhaust its administrative remedies.

While the Court is mindful of the fact that plaintiff's claims are unique in that they depart from every one of the elements of the typical common fund case: the existence of traditional

litigation, counsel's representation of a class (disputed here), and the express creation of a specially-reserved common fund, each of these elements has, by itself, been broadly defined for purposes of determining an attorney's alleged right to a fee award under the common fund doctrine.  While expressing no view upon the ultimate merits of plaintiff's claims, I conclude that plaintiff has asserted factual allegations "sufficient to raise a right to relief above the speculative level," and to withstand a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6).  *Bell Atlantic Corp*., 127 S. Ct. at 1964-65.  I have considered the remainder of defendant's arguments in support of its motion to dismiss, and find them to be without merit.

Relying upon Fed. R. Civ. Proc. 408, defendant also requests that certain references in the Amended Complaint to prior settlement negotiations should be stricken from the Amended Complaint as inadmissible and impertinent "evidence of . . . conduct or statements made in compromise negotiations regarding [a] claim," pursuant to Fed. R. Civ. Proc. 12(f).  Fed. R. Civ. Proc. 12(f), 408.  Plaintiff, however, urges that it included the material solely for the permissible purposes of establishing irreparable harm (by showing that defendant's denial of plaintiff's entitlement to attorneys fees has been longstanding and consistent) and rebutting defendant's argument that plaintiff's administrative activities were solely on Scanlon's behalf.

While the disputed material will undoubtedly be inadmissible to demonstrate defendant's liability at trial pursuant to Fed. R. Civ. Proc. 408, it is neither impertinent nor scandalous pursuant to Fed. R. Civ. Proc. 12(f), and accordingly there is no basis for the Court to strike it from plaintiff's pleading.  *See Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 179 F.R.D. 403, 405 (W.D.N.Y. 1998) (Rule 408 limits the introduction of settlement negotiations at trial, "not the

discoverability of the evidence"). *See also LaForest v. Honeywell Int'l*, 2004 U.S. Dis. LEXIS

30430 at *20 (W.D.N.Y. 2004) (same).


## CONCLUSION

For the foregoing reasons, I find that plaintiff has stated a claim for attorneys fees under a

common fund theory, and defendant's motion to dismiss and to strike pursuant to Fed. R. Civ.

Proc. 12(b)(1) and (6) (Dkt. #30) must be denied.  Defendant's prior motion to dismiss the

original complaint (Dkt. #17) is dismissed as moot.

I further find that plaintiff has demonstrated that irreparable harm will follow if a

preliminary injunction is not granted, as well as substantial questions going to the merits of the

instant action, and a balance of hardships tipping decidedly in its favor.  Accordingly, it is

hereby,

ORDERED that plaintiffs' motion for a preliminary injunction (Dkt. #3) is granted in

part, and it is further

ORDERED that defendant is enjoined from making payments to Terminated Participants

of the subject Plan ("Play Payments"), unless 15% of such payments is placed in an escrow

account, reserved for that purpose, pending the Court's final determination of whether plaintiff is

entitled to an attorney fee award; and it is further

ORDERED that plaintiffs are not required to execute a bond, and it is further

ORDERED that Magistrate Judge Jonathan W. Feldman is assigned to this matter, and

the parties are instructed to contact Magistrate Judge Feldman within ten (10) days to schedule a

Rule 16 Conference and set up a schedule for discovery.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
August 25, 2008.